**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**GARY DOWNS,**

                          **Plaintiff,**

              **v.**                                          **5:06-CV-396**
                                                             **(FJS/GHL)**

**UNITED STATES OF AMERICA, and**
**THE VETERAN'S ADMINISTRATION**
**MEDICAL CENTER,**

                          **Defendants.**
_____

**APPEARANCES**                              **OF COUNSEL**

**MICHAELS & MICHAELS**                      **MARTIN M. MICHAELS, ESQ.**
**109 South Warren Street, Suite 902**
**Syracuse, New York 13202**
**Attorneys for Plaintiff**

**OFFICE OF THE UNITED**                     **WILLIAM F. LARKIN, AUSA**
**STATES ATTORNEY**
**James Hanley U.S. Courthouse**
**& Federal Building**
**100 South Clinton Street**
**P.O. Box 7198**
**Syracuse, New York 13261-7198**
**Attorneys for Defendants**

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

On March 28, 2006, Plaintiff filed this action under the Federal Tort Claims Act

("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*, for injuries that he sustained on or about October

8, 2003, when his right ankle fracture was allegedly repaired in a negligent manner.

Currently before the Court is Defendants' motion for summary judgment on the ground that, because Plaintiff failed to identify an expert witness, he will not be able to establish the acceptable standards of care for mending a right ankle fracture.  In addition, Defendants have cross-moved to strike the affidavit of Michael Boucher, which Plaintiff submitted in opposition to Defendants' motion for summary judgment.

## II. BACKGROUND

On October 6, 2003, Plaintiff fell from a tree approximately six feet, injuring, primarily, his right ankle and left shoulder.  *See* Complaint at ¶ 5.  On October 8, 2003, Plaintiff underwent an initial surgery at the Veteran's Administration Medical Center in Syracuse, New York ("SVAMC") to repair a right ankle fracture.  Mark Wilson was the attending physician; Shylaja Maini administered the anesthesia.  *See id.* at ¶ 7.  No complications were reported, and a Synthes 1/3 tubular plate was placed along the posterolateral aspect of the fibula.  *See id.* Plaintiff was discharged on October 16, 2003, with instructions to maintain non-weightbearing on the right ankle.  *See id.* at ¶ 8.

On November 4, 2003, Plaintiff went to Defendant SVAMC's clinic where he saw Dr. Shahnaz Punjani, who indicated that there was no evidence of loosening of the hardware and removed the sutures.  *See id.* at ¶ 9.

On December 19, 2003, Plaintiff went to Defendant SVAMC's emergency room when his right ankle became inflamed, swollen and painful.  *See id.* at ¶ 10.  A review of an x-ray taken on November 17, 2003, indicated a medial malleolar fracture fragment, widened syndesmosis, loosening of the hardware along distal fibula, and osteolyis reaction around the screws in the

plate.  *See id.*  This was not discovered until December 19, 2003, and Plaintiff states that Dr.

Wilson told him that they had put the plate in incorrectly.  *See id.*  On December 23, 2003,

Plaintiff was admitted to Defendant SVAMC for a second surgery.  *See id.*

      X-rays taken on January 7, 2004, showed new, longer surgical plates extending along the

lateral aspect of the distal femur held in place by seven screws.  *See id.* at ¶ 11.  Plaintiff did not

want to be discharged from Defendant SVAMC because he was physically unable to take care of

himself and he felt that the early discharge and failure to treat the fractures properly in the first

surgery led to the complication in the second treatment.  *See id.* at ¶ 13.

      On January 19, 2004, Plaintiff was treated at Defendant SVAMC's emergency department

for burning pain in his right ankle.  *See id.*  The x-ray appeared unchanged.  *See id.*  On January

22, 2004, Plaintiff was admitted and treated for burning pain of the right lateral calf with an open

wound 4-5 centimeters long with serosanguineous discharge.  *See id.*  The attending note of John

Stetson stated that Plaintiff had an opening of an incision laterally in the midsection of the lateral

incision right over the metal plate.  *See id.*  Plaintiff was admitted to the hospital for aggressive

wound care and wet to dry dressing, whirlpool therapy to prevent complete dehiscence of his

wound.  *See id.*  The January 29, 2004 discharge notes state that his wound appeared with a good

amount of fibrinous material with a clean base.  *See id.*  Thereafter, Plaintiff was transferred to

TCU for continuing wound care and whirlpool therapy, and his wound showed very slow

improvement.  *See id.*  On March 29, 2004, he was treated at Defendant SVAMC's orthopedic

clinic, and his open wound was examined and an x-ray was taken showing widening of the

medial mortis and not many signs of healing.  *See id.*  Dr. Bennet suspected an infection in the

fibula and a diagnosis of an infected nonunion.  *See id.*

Plaintiff alleges that the medical and surgical care, diagnosis and treatment that Defendant SVAMC rendered was performed in a negligent manner resulting in severe and permanent personal injury to him. *See id.* at ¶ 17. He further asserts that Defendant SVAMC was careless in its employment, training and supervision of doctors, nurses, and paramedical personnel and failed to render proper medical care, diagnosis, treatment and discharge instructions. *See id.* at ¶ 18.

On April 7, 2004, Plaintiff filed a Form 95 - Administrative Claim ("Form 95") with the Department of Veteran's Affairs to seek compensation for his repeated surgeries and improper care. Prior to receiving a decision regarding his Form 95 filing, Plaintiff filed the instant action under the FTCA, alleging (1) that Defendant SVAMC was responsible for the negligent, careless and reckless acts and/or omissions of its employees, agents and/or servants and the failure to care for Plaintiff properly; (2) that Defendant SVAMC was negligent by failing to properly hire, train and supervise its employees; and (3) that Defendant SVAMC, through its agents, acted negligently when it failed to provide medical services in accordance with acceptable medical standards, resulting in the failure to diagnose, treat and care for Plaintiff properly.

## III. DISCUSSION

**A.      Subject matter jurisdiction**[1]

"A claimant's failure to satisfy the FTCA's presentment requirement precludes subsequent litigation of those claims." *Donahue v. United States of Am., Transp. Sec. Admin.*, 457 F. Supp.

---

[1] This discussion relates only to Plaintiff's first and second causes of action. Defendants do not dispute that the Court has subject matter jurisdiction over Plaintiff's third cause of action, which sounds in medical malpractice.

2d 137, 141 (E.D.N.Y. 2006) (citations omitted).  Therefore, a district court lacks subject matter jurisdiction if a plaintiff fails to exhaust his administrative remedies under the FTCA.  *See Romulus v. United States*, 160 F.3d 131, 132 (2d Cir. 1998) (citation omitted).

To comply with the FTCA's requirements, "a Notice of Claim filed pursuant to the FTCA must provide enough information to permit the agency to conduct an investigation and to estimate the claim's worth."  *Id.* (citing *Keene Corp. v. United States*, 700 F.2d 836, 842 (1983)).  "A claim must be specific enough to serve the purpose of the FTCA to enable the federal government to expedite the fair settlement of tort claims."  *Id.* (citing *Johnson v. United States*, 788 F.2d 836, 842-43 (2d Cir. 1986)).  In *Lopez v. Zenk*, No. 06-CV-4601, 2008 WL 3285895 (E.D.N.Y. Aug. 8, 2008), the court analyzed *Johnson* and explained that the presentment requirement did not require a plaintiff to allege specific facts to support a distinct cause of action.  *See id.* at *3.  "So long as the basic information is provided, the question is 'whether a reasonably thorough investigation should have uncovered any pertinent information in the government's possession . . . .'"  *Id.* (citation omitted).  Thus, "even a relatively bare-bones [Form] 95 should trigger an agency investigation . . . [and] the agency should then anticipate claims stemming from any pertinent information in the government's possession.'"  *Id.* (quotation omitted).

Plaintiff's Form 95 reads as follows:

> Surgery on lower right leg.  Seven-inch steel plate was put in improperly at the Veterans' Administration Hospital in Syracuse, New York, causing infection in lower right leg.  Doctor who did the surgery stated that he did the surgery incorrectly for a broken leg.

> \* \* \* \* \* \* \* \* \*

> Claimant had to have repeated surgery.

-5-

> Veterans' Administration Hospital refuses to treat claimant for
> improper treatment and failure to care for complications created.

*See* Defendants' Reply Memorandum of Law, Exhibit "D," Form 95, at 5.

In his first cause of action, Plaintiff alleges that Defendant SVAMC "is responsible for the acts and/or omissions of its employees" and that, "[a]s a direct consequent [sic] of the negligent, careless and reckless acts and/or omissions of [Defendant SVAMC], its employees, agents and/or servants and the failure to properly care for . . . Plaintiff . . . [Plaintiff] was caused to suffer . . . the injuries and damages herein stated." *See* Complaint at ¶¶ 25-26.

In his second cause of action, Plaintiff asserts that Defendant SVAMC "was negligent in that [it], *inter alia*, failed to properly hire, train ad [sic] supervise its employees, agents and/or servants" and "[t]hat as a direct consequence of [Defendant SVAMC's] failure to properly hire, train, and supervise its employees, agents and/or servant [sic], . . . Plaintiff . . . was caused to suffer, *inter alia*, the injuries and damages stated herein." *See id.* at ¶¶ 28-29.

Although Plaintiff's Form 95 is not overly specific, the Court finds that it contains sufficient information to permit Defendants to conduct an investigation into what occurred during both of Plaintiff's surgeries and the treatment that he received after both surgeries. Particularly in light of the fact that Plaintiff asserted in his Form 95 that the physician who performed the first surgery stated that he did the surgery incorrectly, Defendants' investigation should have uncovered pertinent information regarding any negligent acts or omissions related to Plaintiff's surgeries and treatment for the complications that arose because of those surgeries. Therefore, the Court denies Defendants' motion for summary judgment with regard to Plaintiff's first cause of action insofar as it is based on a lack of subject matter jurisdiction.

In his second cause of action, Plaintiff alleges that Defendant SVAMC was negligent in hiring, training, and supervising its medical staff.[2]  The Court grants Defendant SVAMC's motion for summary judgment with regard to this cause of action for lack of subject matter jurisdiction because, based on the allegations in Plaintiff's Form 95, Defendants' investigation would not have reasonably uncovered any pertinent information about Defendant SVAMC's hiring, training, or supervision practices with respect to its medical personnel.[3]

**B.      *Res ipsa loquitur***

The doctrine of *res ipsa loquitur* applies to the type of "'surgical errors on which any layman is competent to pass judgment and conclude from common experience that such things do not happen if there has been proper skill and care.'"  *Kambat v. St. Francis Hosp.*, 89 N.Y.2d 489, 496 (1997) (quoting Prosser and Keeton, Torts § 40, at 256-257 [5th ed]) (finding *res ipsa loquitur* applies where an 18-by-18 inch laparotomy pad was found inside a patient after surgery).[4]

To have a court charge *res ipsa loquitur* to a jury, a plaintiff must establish three conditions, which demonstrate a *prima facie* case of negligence,

---

[2] For the first time in his papers in opposition to Defendants' motion, Plaintiff asserts that this claim is based on Defendant SVAMC's failure to provide him with a treating physician

[3] Since the Court is dismissing Plaintiff's second cause of action, the Court denies as moot Defendants' cross-motion to strike the affidavit of Michael Boucher because this affidavit relates only to this cause of action.

[4] The *Kambat* court held that "a narrow category of factually simple medical malpractice cases" can be raised under the doctrine of *res ipsa loquitur* and that a common scenario for such cases is "where a surgeon leaves a sponge or foreign object inside the patient's body."  *Kambat*, 89 N.Y.2d at 496 (citations omitted).

> [f]irst, the event must be of a kind that ordinarily does not occur in the absence of someone's negligence; second, it must be caused by an agency or instrumentality within the exclusive control of the defendant; and third, it must not have been due to any voluntary action or contribution on the part of the plaintiff.

*Kambat*, 89 N.Y.2d at 494 (citing *Ebanks v. New York City Tr. Auth.*, 70 N.Y.2d 621, 623, 518 N.Y.S.2d 776, 512 N.E.2d 297).

Furthermore,

> [t]o rely on *res ipsa loquitur* a plaintiff need not conclusively eliminate the possibility of all other causes of the injury. It is enough that the evidence supporting the three conditions afford a rational basis for concluding that "it is more likely than not" that the injury was caused by defendant's negligence . . . .

*Id.* (citing Restatement [Second] of Torts § 328D, cmt. e).

"In a medical malpractice action, the theory of *res ipsa loquitur* permits an inference of negligence to be drawn by the fact finder from the very circumstances of the occurrence, despite the absence of expert testimony regarding the proper standards of practice." *DeLaney v. Champlain Valley Physicians Hosp. Med. Ctr.*, 232 A.D.2d 840, 841 (3d Dep't 1996) (citing *Dermatossian v. New York City Tr. Auth.*, 67 NY2d 219, 226) (other citation omitted). In other words, "[s]imple negligence principles are applicable in those cases where the alleged negligent act may be readily determined by the trier of the facts based on common knowledge . . . ." *Coursen v. New York Hosp.-Cornell Med. Ctr.*, 114 A.D.2d 254, 256 (1st Dep't 1986) (citations omitted). However, if the supposed negligent acts complained of require professional skill and knowledge, the claim rises to the level of malpractice, which requires the claimant to meet the requisite evidentiary standards. *See Mossman v. Albany Med. Ctr. Hosp.*, 34 A.D.2d 263, 264 (3d Dep't 1970) (citing *Morwin v. Albany Hosp.*, 7 A D 2d 582, 585).

With regard to the second element needed to establish a *prima facie* case of negligence under the *res ipsa loquitur* theory, "[t]he fact that the accident occurs after a defendant relinquishes control does not preclude application of the doctrine provided there is evidence that the instrumentality has not been improperly handled by the plaintiff or some third person after control was relinquished by the defendant." *Hyams v. King Kullen Grocery Co., Inc.*, 32 Misc. 2d 920, 927 (Mun. Ct. 1961), *aff'd in part, rev'd in part on other grounds*, 230 N.Y.S.2d 962 (App. Term 1962), *aff'd on other grounds*, 20 A.D.2d 657 (2d Dep't 1964).

Plaintiff relies on the doctrine of *res ipsa loquitur* as a theory of proof for his third cause of action. Plaintiff clearly satisfies the first element of the *res ipsa loquitur* test; i.e., the postoperative bending of a surgical plate, resulting in the need for a second remedial surgery, is not a typical or ordinary event.

With respect to the second element – that the harm is caused by an agency or instrumentality within the exclusive control of the defendant – Plaintiff argues that, during the surgery, he was unconscious, was under Defendant SVAMC's control, and that Defendant SVAMC selected the first surgical plate, which subsequently failed. *See* Plaintiff's Memorandum of Law at 7. There can be no dispute that the choice of the plate, as well as its installation and placement, was within Defendant SVAMC's exclusive control. However, the problems with the plate – i.e., its loosening and bending – were not discovered until two months after the initial surgery. Furthermore, x-rays taken one month after the surgery indicated that the surgical hardware was intact. However, there is nothing in the record, other than Defendants' unsubstantiated conjecture, to indicate that Plaintiff contributed to the failure of the surgical hardware. Nonetheless, because there is nothing in the record to indicate what occurred between

the time of Plaintiff's first surgery and the time that the surgical hardware failed, the Court finds that there is an issue of fact as to this element of the *res ipsa loquitur* theory.

To establish the third element – that the injury was not due to any voluntary action on the part of the plaintiff – a plaintiff need not exclude all other possible causes of injury. Rather, a plaintiff needs to demonstrate that "'it is more likely than not' that the injury was caused by defendant's negligence." *Kambat*, 89 N.Y.2d at 494 (citation omitted). Where there are issues of fact regarding a plaintiff's possible contributory negligence, it is appropriate for a court to submit the matter to a jury under this doctrine. *See Braun v. Consol. Edison Co. of N.Y.*, 31 A.D.2d 165, 168 (1st Dep't 1968), *aff'd*, 26 N.Y.2d 825 (1970); *Kambat*, 89 N.Y.2d at 497 (citations omitted).[5]

In this case, because Plaintiff was not under Defendant SVAMC's control for some period of time before the surgical plate failed, there is an issue of fact about whether anything that Plaintiff did contributed to the loosening and bending of the plate. Thus, the Court finds that there is an issue of fact about whether Plaintiff can satisfy this element of his claim under the theory of *res ipsa loquitur*. The Court, therefore, denies Defendants' motion for summary judgment with respect to Plaintiff's third cause of action.

**C.     Ordinary negligence and Plaintiff's first cause of action**

As noted, in his first cause of action, Plaintiff alleges that Defendant SVAMC's medical

---

[5] In *Kambat*, the jury heard conflicting testimony regarding possible explanations of how a laparotomy pad got into the decedent's abdomen. The defendant alleged that the decedent caused the injury by swallowing the pad and the plaintiff argued that it was accidentally left inside the decedent after a previously performed surgery. *See Kambat*, 89 N.Y.2d at 497 (citations omitted).

staff acted negligently in the level of care that they provided to him, not only during his surgeries, but in the care that they provided to him before and after those surgeries.  Moreover, in opposition to Defendants' motion, Plaintiff argues that he does not have to provide expert testimony about the standard of care because he was unconscious at the time of his surgeries and that, because he has memory problems, he is held to a lesser standard of proof.

As a preliminary matter, to the extent that Plaintiff's first cause of action encompasses claims of negligence arising from the surgical placement of the plate in his leg, this cause of action is redundant of Plaintiff's third cause of action.  Furthermore, under the circumstances of this case, Plaintiff is not held to a lesser standard of proof because of his memory loss.[6]  Finally,

---

[6] Plaintiff relies on two cases, *Noseworthy v. City of N.Y.*, 298 N.Y. 76 (1948), and *Schechter v. Klanfer*, 28 N.Y.2d 228 (1971), for the proposition that, because he has severe memory problems, he should be held to a lower standard of proof.  Neither of these cases supports Plaintiff's theory under the circumstances of this case.  *Noseworthy* was a death case in which the court held that, in such a case, "'the plaintiff is not held to the high degree of proof required in a case where the injured person may take the stand and give his version of the happening of the accident.'"  *Noseworthy*, 298 N.Y. at 80.  In *Schechter*, the court explained that the "lesser burden [of proof that was applied in *Noseworthy*] was applied to an amnesiac plaintiff in *Cresci v. City of New York* (27 A D 2d 277, 279, affd. 21 N Y 2d 932) on the assumption that there could be no different standard than for a death case."  *Schechter*, 28 N.Y.2d at 231.  The court went on to explain that

> [t]he Committee on Pattern Jury Instruction of the Association of [New York] Supreme Court Justices recommends, in a pattern instruction, that the amnesiac plaintiff be held to a lesser degree of proof if the jury is satisfied from medical and other evidence that plaintiff is suffering from loss of memory and that **the injuries plaintiff incurred were a substantial factor in causing plaintiff's loss of memory** (PJI 1:62).

*Id.* at 232 (footnote omitted) (emphasis added).

In this case, even if the Court assumes that Plaintiff suffers from a loss of memory, he would not be eligible for a jury instruction holding him to a lesser degree of proof because the

(continued...)

-11-

with regard to the merits of the remainder of this claim – that the medical staff acted negligently in the level of care that they provided to him before and after his surgeries (and during the second surgery in which they replaced the original plate in his leg with a new plate), Plaintiff cannot rely on either the theory of ordinary negligence or *res ipsa loquitur*.

Under New York law, it is well-settled that, "'unless the alleged act of malpractice falls within the competence of a lay jury to evaluate, it is incumbent upon the plaintiff to present expert testimony in support of the allegations to establish a prima facie case of malpractice.'" *Sitts v. United States*, 811 F.2d 736, 739 (2d Cir. 1987) (quotation and other citations omitted). Furthermore,

> [a] physician's obligations to his patient are to possess at least the degree of knowledge and skill possessed by the average member of the medical profession in the community in which he practices, to exercise ordinary and reasonable care in the application of that professional knowledge and skill, and to use his best judgment in the application of his knowledge and skill.

*Id.*

In order to show that the defendant did not exercise ordinary and reasonable care, a plaintiff must demonstrate "what the accepted standards of practice were and that the defendant deviated from those standards or failed to apply whatever superior knowledge he had for the plaintiff's benefit." *Id.* (citations omitted).

As the court in *Sitts* explained, "[t]he requirement that the plaintiff introduce expert medical testimony is imposed in part because 'without expert assistance a jury will often have no understanding of what constitutes reasonable behavior in a complex and technical profession

---

[6](...continued)
injuries that Plaintiff alleges Defendant SVAMC caused were **not** a factor in his loss of memory.

-12-

such as medicine.'" *Id.* at 740 (quotation omitted).  Moreover, "even where negligence is easily within the layman's realm of knowledge and hence properly provable without expert testimony, expert testimony may be required to prove that the negligence was the proximate cause of the injury complained of . . . ."  *Id.*

Finally, where the plaintiff has not proffered such expert testimony – or, as in this case, has affirmatively stated that he will not rely on an expert –

> the defendant is entitled to judgment as a matter of law, whether by means of a judgment notwithstanding a jury verdict in favor of the plaintiff, . . . or dismissal of the case at the close of the plaintiff's evidence, . . . or dismissal after an offer of proof where the plaintiff states that no expert medical evidence will be presented, . . . or the granting of a motion for summary judgment in opposition to which the plaintiff fails to come forward with such evidence . . . .

*Id.* (internal citations omitted).

Based on these well-established legal principles, the Court grants Defendants' motion for summary judgment with regard to Plaintiff's first cause of action because Plaintiff has failed to, and has affirmatively acknowledged that he will not, come forward with expert medical evidence.


### IV. CONCLUSION

After reviewing the entire file in this case, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendants' motion for summary judgment is **GRANTED** with respect to Plaintiff's first and second causes of action; and the Court further

**ORDERS** that Defendants' motion for summary judgment is **DENIED** with respect to

-13-

Plaintiff's third cause of action based on the theory of *res ipsa loquitur*; and the Court further

**ORDERS** that Defendants' cross-motion to strike the affidavit of Michael Boucher is

**DENIED** as moot; and the Court further

**ORDERS** that Plaintiff's counsel shall initiate a telephone conference, using a

professional telephone-conferencing service, with the Court and opposing counsel on **September**

**1, 2009**, at **9:30 a.m.** to schedule the trial of this matter.

**IT IS SO ORDERED.**

Dated:  August 24, 2009
        Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge